**CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP**
Attorneys at Law
1400 E. Southern Ave., Suite 400
Tempe, Arizona 85282-5691
(480) 427-2800, Facsimile (480) 427-2801
minuteentries@carpenterhazlewood.com
Michelle.Wellnitz@carpenterhazlewood.com
Michelle B. Wellnitz – 326065
IQDATA.53
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **KAYLA M. WOOD,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**I.Q. DATA INTERNATIONAL, INC.,**<br><br>**Defendant.** | Case No. 2:21-cv-08601-JFW-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>**HEARING DATE: February 7, 2022**<br>**HEARING TIME: 1:30 p.m.**<br>**JUDGE: Hon. John F. Walter**<br>**COURTROOM: 7A** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION……………………………………………………...6

II. LEGAL STANDARD………………………………………………….7

III. ARGUMENT…………………………………………………………..8

A. The Complaint Must Be Dismissed For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Article III Standing to Sue...........8

1. Plaintiff fails to plead that she suffered a harm traditionally recognized as providing a basis for a lawsuit in American courts......................................................10

2. Plaintiff's bare allegations that IQ Data committed procedural violations under the FDCPA are insufficient for Article III standing..........................................................11

3. Plaintiff's alleged risk of future harm fails to satisfy the *Ramirez* Court's concrete-harm requirement for Article III standing............................................................13

B. The Complaint Must Be Dismissed For Failure to State a Claim Under the California Rosenthal Act..................................................14

1. The Debt Obligation Upon Which Plaintiff Bases Her Rosenthal Act Claims Is Not a Consumer Credit Transaction Under the Rosenthal Act.......................................15

IV. CONCLUSION.......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 7

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007) ... 7

*Brown v. Blackbaud, Inc.*, 2018 WL 9619430 (C.D. Cal. Nov. 6, 2018) ... 15

*Bush v. Optio Sols., LLC*, 2021 WL 3201359 (E.D.N.Y. July 28, 2021) ... 6, 10

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) ... 9

*Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ... 6, 11

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) ... 8

*Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020) ... 9

*Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754, 114 Cal. Rptr. 2d 558 (2001) ... 16, 17

*Hunstein v. Preferred Collection & Management Services*, 994 F.3d 1341 (11th Cir. 2021) ... 11, 13

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021) ... 11, 13

*In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794 (E.D.N.Y. July 23, 2021) ... 6, 11, 14

*Joann Liu v. MRS BPO, LLC*, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021) ... 6

*Kale v. Procollect, Inc.*,
2021 WL 2784556 (W.D. Tenn. July 2, 2021)....................12

*Leasure v. Willmark Communities, Inc.*,
2013 WL 6097944 (S.D. Cal. Mar. 14, 2013)....................15, 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 561 (1992)....................7, 8

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)....................7

*Ortiz v. Lyon Mgmt. Grp., Inc.*,
157 Cal. App. 4th 604, 69 Cal. Rptr. 3d 66 (2007)....................15

*Phillips v. Archstone Simi Valley LLC*,
2016 WL 7444550 (C.D. Cal. Dec. 15, 2016)....................16

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009)....................9

*Raines v. Byrd*,
521 U.S. 811, 818 (1997)....................8

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
2021 WL 4806383 (D. Kan. Oct. 14, 2021)....................6, 11

*Spokeo v. Robins*,
136 S.Ct. 1540 (2016)....................*passim*

*Steel Co v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................7

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................*passim*

*Traylor v. Wyndham Resort Dev. Corp.*,
2017 WL 5172240 (C.D. Cal. May 2, 2017)....................16

*Warth v. Seldin*,
422 U.S. 490 (1975)....................7, 8

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)....7

*Winsor v. Sequoia Benefits & Ins. Servs. LLC*,
2021 WL 5053087 (N.D. Cal. Nov. 1, 2021)....7, 12

*Yatooma v. OP Prop. Mgmt. LP*,
2017 WL 3120259 (C.D. Cal. July 20, 2017)....16, 17

**Statutes**

15 U.S.C. § 1692(c)....6

15 U.S.C. § 1692(c)(b)....7

15 U.S.C. § 1692(f)....6

Cal. Civ. Code § 1788.10....14

Cal. Civ. Code § 1788.17....6

Cal. Civ. Code §§ 1788.2(e)-(f)....14

**Other Authorities**

*Credit*, Black's Law Dictionary (7th ed. 1999)....15

Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)....8

U.S. Const., art. III....*passim*

# I. INTRODUCTION

Plaintiff Kayla M. Wood ("Plaintiff") filed this action against Defendant IQ Data, claiming that IQ Data violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692(c), 1692(f) and the California Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788.17. Complaint (Doc. No. 1) ¶ 1.

The facts upon which Plaintiff bases her claims are that Plaintiff was a resident of the Villa Azul apartments located in Arroyo Grande, California. Complaint (Doc. No. 1) ¶ 7. In 2020, Plaintiff vacated the apartment and in connection therewith, IQ Data was assigned the right to collect Plaintiff's past due rental balance from Villa Azul (the "Debt Obligation"). Complaint (Doc. No. 1) ¶¶ 9-10. Thereafter, Plaintiff alleges that IQ Data sent information regarding Plaintiff and the Debt Obligation to a commercial mail house to prepare, print, and mail a collection letter to Plaintiff regarding the Debt Obligation. Complaint (Doc. No. 1) ¶¶ 13-15. Plaintiff maintains that IQ Data unlawfully disclosed to the third-party that Plaintiff owed the Debt Obligation. Complaint (Doc. No. 1) ¶ 19.

In sum, Plaintiff brings her Complaint under the "Mailing-Vendor Theory[1]" in which a defendant debt collector employs an outside firm to print and mail collection letters to a plaintiff who argues that this violates the FDCPA because the statute limits the individuals and entities with which a debt collector may share information. *See* 15 U.S.C. § 1692(c)(b). IQ Data acknowledges that neither this Court nor the Ninth

---

[1] The term, "Mailing-Vendor Theory", has been utilized by other District Courts to identify factual allegations and claims nearly identical to those brought by Plaintiff (e.g., a defendant's disclosure of the fact that a plaintiff owed a debt). *See e.g.* *In re FDCPA Mailing Vendor Cases*, WL 3160794 (E.D.N.Y. July 23, 2021); *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 2021 WL 4806383 (D. Kan. Oct. 14, 2021); *Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021); *Sputz v. Alltran Fin., LP*, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021); *Joann Liu, on behalf of herself & others similarly situated v. MRS BPO, LLC*, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021); *Bush v. Optio Sols., LLC*, 2021 WL 3201359 (E.D.N.Y. July 28, 2021).

Circuit have addressed the Mailing-Vendor Theory in the wake of the U.S. Supreme Court's holding in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). However, as cited and extrapolated on herein, a number of District Courts in New York, Kansas, and Illinois have and they have each dismissed those cases on the basis of *Ramirez's* holding.

## II. LEGAL STANDARD

A court must dismiss claims under Federal Rules of Civil Procedure 12(b)(1) where a plaintiff has failed to establish standing under Article III of the U.S. Constitution. *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998); Fed. R. Civ. P. 12(b)(1). Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Moreover, "Article III standing is a distinct requirement, and it comes first." *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 2021 WL 5053087, at *5 (N.D. Cal. Nov. 1, 2021). It is the plaintiff's burden, even at the pleadings stage, to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also* *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

In addition, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

# III. ARGUMENT

## A. The Complaint Must Be Dismissed For Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Article III Standing to Sue.

In *TransUnion LLC v. Ramirez*, the United States Supreme Court clarified that only a plaintiff concretely harmed by a defendant's statutory violation has Article III standing to seek damages against that private defendant in federal court. 141 S. Ct. 2190, 2205 (2021). Article III of the United States Constitution confines federal court jurisdiction to the resolution of actual cases or controversies. *Spokeo v. Robins*, 136 S.Ct. 1540, 1546-47 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Specifically, "[f]or there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Ramirez*, 141 S. Ct. at 2203 (citing *Raines*, 521 U.S. at 818) (quotations omitted). In order "[t]o demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: What's it to you?" *Ramirez*, 141 S. Ct. at 2203 (citing Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)) (quotations omitted).

To answer that question, the *Ramirez* Court held that a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ramirez*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). The plaintiff is the party that has the burden of establishing the three elements. *Spokeo*, 136 S.Ct. at 1546 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Ramirez*, 141 S. Ct. at 2208 (quoting *Lujan*, 504 U.S. at 561). A plaintiff must also clearly allege facts demonstrating each element at the pleading stage of litigation. *Spokeo*, 578 U.S. at 341 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

The *Ramirez* Court focused on the first element, the concrete-harm requirement, and was clear that to satisfy the requirement, an injury must be concrete, real, and plaintiff must plead facts demonstrating as much. *Ramirez*, 141 S. Ct. at 2208; *see also* *Spokeo*, 578 U.S. at 346 ("[A] 'concrete' injury must be 'de facto' that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'"). The *Ramirez* Court referred to its opinion in *Spokeo* in which it "indicated that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Ramirez*, 141 S. Ct. at 2203; *Spokeo*, 578 U.S. at 341.

Examples of such traditional harms that qualify as concrete injuries under Article III include physical harms, monetary harms, abridgement of free speech, intrusion upon seclusion, etc. *Ramirez*, 141 S. Ct. at 2203 (citing *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020); *Spokeo*, 578 U. S., at 340; *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)).

However, harms that are not sufficient to qualify as a concrete injury under Article III are those elevated "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Ramirez,* 141 S. Ct. at 2205 ("[Congress] may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.") (quotations omitted). The *Spokeo* Court rejected such a proposition to the contrary and the *Ramirez* Court affirmed this rejection. *Ramirez*, 141 S. Ct. at 2205; *Spokeo*, 578 U.S. at 341. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Ramirez*, 141 S. Ct. at 2205; *Spokeo*, 578 U.S. at 341. The *Ramirez* Court was clear that a "bare procedural violation, divorced from any concrete harm, . . . does not suffice for Article III standing." *Ramirez*, 141 S. Ct. at 2213 (2021); (quoting *Spokeo*, 578 U.S. at 341).

In *Ramirez*, plaintiff brought a class action lawsuit against TransUnion, LLC ("TransUnion"), a credit reporting agency, under the Fair Credit Report Act ("FCRA"). *Ramirez*, 141 S. Ct. at 2200. Plaintiff claimed that TransUnion failed to use reasonable procedures required by the FCRA to ensure accuracy of its internal credit files – a procedural violation. *Id*. at 2197. Specifically, plaintiff alleged that "TransUnion did not do enough to ensure that [U.S. Treasury Department's Office of Foreign Assets Control] alerts labeling them as potential terrorists were not included in their credit files." *Id.*

Of the 8,185 class action members, TransUnion provided 1,853 of their misleading credit reports to third-party businesses – the remaining 6,332 member's misleading credit reports were not provided to third-party businesses – they remained internal. *Id*. at 2200. The *Ramirez* Court held that the 6,332 members whose inaccurate credit files were solely maintained internally did not suffer concrete harm sufficient to establish Article III standing. *Ramirez*, 141 S. Ct. at 2210. ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."). In other words, those 6,332 members' allegations were based on a bare procedural violation but no concrete injury. *See* *Ramirez*, 141 S. Ct. at 2214 ("No concrete harm, no standing.").

**1. Plaintiff fails to plead that she suffered a harm traditionally recognized as providing a basis for a lawsuit in American courts.**

Plaintiff seeks relief under her Mailing-Vendor Theory on the basis that IQ Data's alleged conduct "violated Plaintiff's privacy rights." Complaint (Doc. No. 1) ¶ 21. Yet, Plaintiff fails to plead in any level of detail a concrete harm she sustained in connection therewith that is traditionally recognized by American courts. In light of the *Ramirez* ruling, this is insufficient for Article III standing. *See e.g.* *Bush v. Optio Sols., LLC*, 2021 WL 3201359, at *3 (E.D.N.Y. July 28, 2021) (dismissing plaintiff's FDCPA Mailing-Vendor Theory claims because "the 'mailing vendor

theory' does not appear viable in the wake of *TransUnion*."); *Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (dismissing plaintiff's FDCPA Mailing-Vendor Theory claims and recognizing that "the *TransUnion* decision 'substantially and materially changed' a district court's analysis of Article III standing in statutory consumer law cases."); *In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *5 (E.D.N.Y. July 23, 2021) (dismissing plaintiff's FDCPA Mailing-Vendor Theory class action lawsuit and opining that "the Supreme Court's decision in *TransUnion* casts significant doubt on the continued viability of *Hunstein*.").

As the *Ramirez* Court opined, "**American courts did not traditionally recognize** intra-company disclosures as actionable publications . . . **[n]or have they necessarily recognized disclosures to printing vendors as actionable publications**." *Ramirez*, 141 S. Ct. at 2210 n.6 (2021); *see e.g.*, *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021) (dismissing plaintiff's FDCPA Mailing-Vendor Theory claims because she "fail[ed] to correlate her alleged harm with one traditionally recognized by American courts" and thus "has not demonstrated an injury-in-fact sufficient for Article II standing."); *Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (finding the Mailing-Vendor Theory unconvincing as "the FDCPA presupposes debt collectors may use telegrams to communicate with debtors, even though that means the contents of the telegram would be transmitted through a telegram operator."). Accordingly, Plaintiff has not plead a harm traditionally recognized by American courts. Thus, Plaintiff fails to satisfy her burden under *Ramirez* to show she has standing to sue in this matter.

**2. Plaintiff's bare allegations that IQ Data committed procedural violations under the FDCPA are insufficient for Article III standing.**

The *Ramirez* Court was clear that a "bare procedural violation, divorced from any concrete harm, . . . does not suffice for Article III standing." *Ramirez*, 141 S. Ct.

at 2213 (2021); (quoting *Spokeo*, 578 U.S. at 341). Under the Mailing-Vendor Theory, Plaintiff maintains that IQ Data violated procedural provisions of the FDCPA and that by virtue of this alone, Plaintiff is entitled to relief. However, as "Article III standing requires a concrete injury even in the context of a statutory violation," Plaintiff is not entitled to relief as she has no standing to seek it. *Ramirez*, 141 S. Ct. at 2205; *Spokeo*, 578 U.S. at 341; *see e.g.*, *Winsor v. Sequoia Benefits & Ins. Servs. LLC*, 2021 WL 5053087, at *5 (N.D. Cal. Nov. 1, 2021) (dismissing plaintiffs' complaint for lack of Article III standing under *Ramirez* and holding that "[w]hile an injury need not be financial to be concrete, it must consist of more than a statutory violation.").

Plaintiff's position is akin to those 6,332 class action members in *Ramirez* whose misleading credit reports were not provided to third-party businesses – they were solely maintained internally with TransUnion. The *Ramirez* Court held that those 6,332 members did not suffer concrete harm sufficient to establish Article III standing. *Ramirez*, 141 S. Ct. at 2210. ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."). In other words, those 6,332 members' allegations were based on a bare procedural violation but no concrete injury. *See* *Ramirez*, 141 S. Ct. at 2214 ("No concrete harm, no standing."); *Kale v. Procollect, Inc.*, 2021 WL 2784556, at *3–4 (W.D. Tenn. July 2, 2021) (dismissing FDCPA class action because the named plaintiff only "alleged procedural violations of the FDCPA."). The same holds true for Plaintiff: her Mailing-Vendor Theory is based on alleged bare procedural violations of the FDCPA but no concrete injury. Thus, Plaintiff fails to articulate her standing under Article III.

/ / /

/ / /

/ / /

**3. Plaintiff's alleged risk of future harm fails to satisfy the *Ramirez* Court's concrete-harm requirement for Article III standing.**

Plaintiff, citing a Sixth Circuit, pre-*Ramirez* case[2], alleges if a debt collector conveys information regarding the debt to a third party, "that the debtor ***may*** well be harmed by the spread of this information." Complaint (Doc. No. 1) ¶ 30 (emphasis added). However, this argument also fails. Plaintiffs in *Ramirez* similarly alleged that TransUnion's procedural violations maintained a material risk of future harm sufficient to satisfy the concrete-harm requirement today. *Ramirez*, 141 S. Ct. at 2211. The *Ramirez* Court dismissed this argument. *Id*. Instead, the Court held that the "mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id*.

Thus, Plaintiff must "demonstrate that the risk of future harm materialized" or that she has been "independently harmed by their exposure to the risk itself." *Id*. Here, Plaintiff merely alleges that she *may* be harmed by IQ Data's alleged conduct – Plaintiff does not allege that her risk of future harm materialized or that she was independently harmed by her exposure to the risk itself. As a result, Plaintiff fails to plead a concrete harm sufficient to satisfy the *Ramirez* Court's concrete-harm requirement. Thus, Plaintiff does not have standing to bring this action.

To show personal stake in a federal court case, a plaintiff must establish an injury in fact, traditionally recognized in American courts, that is concrete, particularized, and actual or imminent – not conjectural or hypothetical. If not, and

---

[2] Plaintiff also cites to *Hunstein v. Preferred Collection & Management Services*, 994 F.3d 1341 (11th Cir. 2021) ("Hunstein I"), which sanctioned the mailing-vendor theory prior to the *Ramirez* holding. However, Defendant notes that upon petition for rehearing after the Supreme Court's decision in *Ramirez*, the Hunstein I panel vacated that opinion. Moreover, the opinion issued in the rehearing, has also been vacated, pending rehearing en banc. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.* ("Hunstein II"), 17 F.4th 1016 (11th Cir. 2021). Accordingly, Plaintiff's reliance on Hunstein I and Hunstein II is unpersuasive.

"the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Ramirez*, 141 S.Ct. at 2203. Plaintiff has failed to establish an injury in fact that IQ Data caused and, therefore, lacks a personal stake in this case – she simply maintains entitlement to statutory damages based on alleged bare procedural violations. *See In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *5 (E.D.N.Y. July 23, 2021) (dismissing plaintiff's FDCPA Mailing-Vendor Theory case "since the only injury asserted by plaintiff arises from the 'mailing vendor' theory, to wit: the disclosure of the fact that she owed a debt, plaintiff has failed to identify any injury in fact."). While Defendant disputes such alleged procedural violations, it is not necessary to evaluate the merits of that assertion, as "bare procedural violations, divorced from any concrete harm . . . does not suffice for Article III standing." *Ramirez*, 141 S. Ct. at 2213.

Based on the foregoing, Plaintiff did not suffer a concrete injury sufficient for Article III pursuant to *Ramirez*. Therefore, there is no case or controversy for this Court to resolve. Plaintiff's Complaint must be dismissed.

### B. The Complaint Must Be Dismissed For Failure to State a Claim Under the California Rosenthal Act.

To bring a claim under the Rosenthal Act, a plaintiff must demonstrate that the consumer debt at issue is a consumer credit transaction or arises from a consumer credit transaction, as those terms are statutorily defined. Cal. Civ. Code §§ 1788.2(e)-(f). The Rosenthal Act prohibits debt collectors from engaging in certain conduct related to the "collection or attempt to collect a consumer debt." *Id*. §§ 1788.10–1788.18. A "consumer debt" is defined as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id*. § 1788.2(f). A "consumer credit transaction" means "a transaction between a natural person and another person in which property, services, or money is ***acquired on credit*** by that natural person from the other person primarily for personal, family, or household purposes." *Id*. § 1788.2(e) (emphasis added).

If the consumer debt fails to meet the definition of a consumer credit transaction under the Rosenthal Act, then the Rosenthal Act does not apply. *See* *Brown v. Blackbaud, Inc.*, 2018 WL 9619430, at *5 (C.D. Cal. Nov. 6, 2018) ("The Court . . . finds that the Follow-Up Fee is not itself a consumer credit transaction, nor does it arise from a consumer credit transaction. The RFDCPA claim is therefore dismissed."); *see also* *Leasure v. Willmark Communities, Inc.*, 2013 WL 6097944, at *4 (S.D. Cal. Mar. 14, 2013) (granting defendant, an apartment complex entity's, motion for summary judgment because "[p]laintiffs have not established that Creekside Meadows engaged in the collection of a consumer debt for purposes of the Rosenthal Act.").

**1. The Debt Obligation Upon Which Plaintiff Bases Her Rosenthal Act Claims Is Not a Consumer Credit Transaction Under the Rosenthal Act.**

Plaintiff brings her Rosenthal Act claims based on a delinquent rent balance stemming from Plaintiff's residency at Villa Azul apartments in Arroyo Grande, California (the "Debt Obligation"). *See* Complaint (Doc. No. 1) ¶¶ 7-10. California courts have held that the Rosenthal Act "states that a consumer credit transaction means a transaction where a person *acquires* property or services *on credit*. In other words, there is a consumer credit transaction when the consumer acquires something without paying for it." *Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754, 759, 114 Cal. Rptr. 2d 558, 561 (2001). Thus, as the court in *Ortiz v. Lyon Mgmt. Grp., Inc.* held:

> **Renting an apartment is not truly a credit transaction**. Credit is "[t]he time that a seller gives the buyer to make the payment that is due" or "[t]he availability of funds either from a financial institution or under a letter of credit." **A landlord neither sells property on time nor makes funds available to tenants**.

157 Cal. App. 4th 604, 618–19, 69 Cal. Rptr. 3d 66, 74 (2007) (quoting Black's Law Dict., *supra*, p. 374, col. 1) (emphasis added). It follows that in the context of

residential lease agreements, "[p]ayment of monthly rent is not a consumer credit transaction within the statutory definition of the term." *Yatooma v. OP Prop. Mgmt. LP*, 2017 WL 3120259, at *3 (C.D. Cal. July 20, 2017); *see also* *Phillips v. Archstone Simi Valley LLC*, 2016 WL 7444550, at *3 (C.D. Cal. Dec. 15, 2016) (reasoning that typical rental transactions do not involve the extension of credit and holding that, as a result, plaintiff's Rosenthal Act claim based on those transactions must fail).

Here, Plaintiff's Debt Obligation arose from a residential lease contract with Villa Azul. *See* Complaint (Doc. No. 1) ¶ 7-10. In other words, Plaintiff was obligated to pay rent on the first day of each month for her occupancy of the apartment during that month. Thus, Villa Azul, the landlord, did not extend any credit to Plaintiff. *Id.*; *see* *Leasure v. Willmark Communities, Inc.*, 2013 WL 6097944, at *4 (S.D. Cal. Mar. 14, 2013) ("Plaintiffs have not established that Creekside Meadows, as a landlord, extends credit to tenants.").

Because Villa Azul did not extend credit to Plaintiff, no consumer credit transaction took place between Plaintiff and Villa Azul by virtue of the obligations created under the residential lease contract. Therefore, the alleged Debt Obligation upon which Plaintiff bases her Rosenthal Act claims could not and did not arise from a consumer credit transaction. Rather, each month, Plaintiff was obligated to pay in advance for her occupancy of the apartment – no credit was extended to Plaintiff. *See* *Traylor v. Wyndham Resort Dev. Corp.*, 2017 WL 5172240, at *4 (C.D. Cal. May 2, 2017) (dismissing plaintiff's Rosenthal Act claims because "the Court agree[d] with Defendant that Plaintiffs did not acquire any 'property' on 'credit,' and so the transaction is not a consumer credit transaction."); *compare with* *Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754, 759, 114 Cal. Rptr. 2d 558, 561 (2001) ("[T]here is a consumer credit transaction when the consumer acquires something without paying for it.").

As the Debt Obligation is not and did not arise from a consumer credit transaction, it does not meet the definition of a consumer debt under the Rosenthal Act. Therefore, the Rosenthal Act does not apply. "Plaintiff should not be able to unilaterally manufacture a 'consumer credit transaction,' where, as here, the underlying contract mutually agreed to by the parties does not involve any extension of credit." *Yatooma v. OP Prop. Mgmt. LP*, 2017 WL 3120259, at *3 (C.D. Cal. July 20, 2017). Therefore, Count II of the Complaint must be dismissed.

**C. CONCLUSION**

To show his or her personal stake in a federal court case, a plaintiff must establish a concrete, injury in fact that is actual or imminent – not conjectural or hypothetical. If not, and "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Ramirez*, 141 S.Ct. at 2203. Plaintiff has failed to show her personal stake in this case in that she has failed to show an injury that IQ Data caused. Therefore, Plaintiff does not have standing to sue. As this Court does not have subject matter jurisdiction over Count I of the Complaint, it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Count II of the Complaint must also be dismissed because the Debt Obligation upon which Plaintiff bases her Rosenthal Act claims does not meet the definition of a consumer debt under the Rosenthal Act. Thus, Plaintiff has failed to state a claim upon which relief may be granted under the Rosenthal Act and Count II must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

RESPECTFULLY SUBMITTED this 5th day of January 2022

**CARPENTER, HAZLEWOOD, DELGADO & BOLEN, LLP**

By: /s/ Michelle B. Wellnitz
Michelle B. Wellnitz, Esq.
1400 E. Southern Avenue, Suite 400
Tempe, Arizona 85282
*Attorneys for Defendant I.Q. Data International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Nicholas M. Wajda
Wajda Law Group, APC
6167 Bristol Parkway
Suite 200
Culver City, California 90230
*Attorneys for the Plaintiff*

By: /s/ Theresa Laubenthal